If it pleases the Court, Charles Manick on behalf of Dairy America, and I will attempt to reserve two minutes. All right. Watch your time, please. Thank you. The issue before the Court goes directly to the parole evidence rule in California, and in particular with regard to this case, the issue of the consideration and applicability of Mr. Adams' declaration submitted by Dairy America. In that declaration, which Mr. Adams relied upon both facts of the case and trade usage, he was opining with regard to the meaning of a clause within the insurance contract, the insurance policy. Was it in the policy or in the binder? I apologize. It was in the binder as well as in the policy in both. Originally, in the binder, one of the issues that came up was the fact that this language, this lost or not lost clause, was in the binder, but there was no exclusionary language, the attachment language which was added to the policy later, but was implied per Fossler and per California law that that exclusion, limiting the time for which the policy was effective, was added, would not, was implied in the binder. And yet, those two clauses are at odds with each other based upon the Adams' declaration. Can you help me with this? Sure. If there's, I looked at Parlier, and it basically says the binder points at the policy. And so I was wondering if there's a case that says if there's language in the binder that contradicts or is inconsistent with the policy language, then we apply the binder language, or at least tells us, gives instructions as to what we're supposed to do. The case law that we looked at, there is very little case law with regard to binder versus policy, mainly because most of the general law, the basic law, is that the policy is going to control and will subsume most of the language within the binder. However, in this instance, as pointed out, the lost or not lost clause, which is at odds with standard policy language, is in both the binder and the policy. Thus, you have this issue concerning an interpretation of the contract, which the lower court resolved without following parole evidence rule law in California, based upon the PG&E ruling, which would have required the district court to give weight to the interpretation and the legal opinion of the expert, Adams, with regard to this meaning of this particular clause within an ocean marine cargo policy. So when I read Adams' declaration, he seemed to be talking about the binder. Is it your view, then, that he was also talking about the policy itself? Yes. Though not clear in the ex — in his opinion, or I'm sorry, in his declaration, it's clear that the lost or not lost clause does exist within the policy, does continue. He deals with the binder specifically because the binder dealt with that particular time period under which the loss occurred. Remember, the binder was issued, the loss occurs, then the policy comes later with the attachment. And thus, what Adams focuses on is, here's the legal effect of the binder. Now, the appellee, their contention is, well, you ignore the binder given the standard language in the policy, and therefore you don't have to worry about this issue of timeliness. Our position, however, is it is extremely important both for the fact of timeliness, that it survives both in the original binder and continues also into the policy. And thus, this question of what did the parties intend, you have these two diametrically opposed, completely irreconcilable provisions based upon one expert's declaration that these are irreconcilable. And thus, you have this situation which, on its face, would be ambiguous. Thus, that aspect, that issue should have gone to the jury, should have defeated this summary judgment motion. But under California Insurance Code Section 382.5a, are you familiar with that? It says, furthermore, except as superseded by the clear and express terms of the binder, a binder shall be deemed to include all of the usual terms of the policy as to which the binder was given, seems to indicate under that code section the binder controls over the policy. Yes. With regard to certain aspects where it doesn't conflict, the binder would, yes, in fact, control over the policy. And yet, from our perspective, again, and I would agree with Justice — Well, wait, wait. I mean, is 382.5 applicable here? I thought it was limited to insurance in the amount of a million dollars or more. No. Is that wrong? It is not applicable here. It doesn't apply here. It does not apply in this case. You're right. That's right. But the point, the point is, and I apologize for that, but the point is, with regard to our situation, the key aspect here is that you have this binder which is subsumed within the policy. The lost or not lost clause is explained straightforwardly with facts and under trade usage by the Adams Declaration. It is completely disregarded by the lower court, who then says, well, this is what the meaning is. In essence, that's what the court stated. The court, in essence, acted as their own expert. Can you point me to the best language in the Adams Declaration? The issue here, of course, is whether the transit of the goods has to start. If I'm understanding it correctly, the transit of the goods has to start after the date, the effective date of the policy. Is that right? Is my understanding right on that? No. Are you talking about with regard to what Adams is stating? So the key issue for the coverage question is whether, for coverage, the transit of the goods has to begin after the effective date of the policy, or it can begin before and just be continuing during the effective date. Is that right? That's right. That's the essential difference between the two parties. And so you want us to read Adams Declaration as addressing that issue and saying that the transit of the goods has to begin before the effective date. Is that right? That's right. So what's the best language in the Declaration to assist us in reaching that conclusion? That would be page 56 of the excerpts of record. His declaration, Adams Declaration, paragraph 15 and 16. He states in that, and I'll get to the point here, it is not custom and practice in the industry for an ocean cargo stock throughput binder of policy to contain a lost or not lost clause in that portion of the binder of policy entitled geographical limits. He states that, further, a lost or not lost clause, as used in Ocean Marine, provides that the insurer will pay even if the loss insured against has occurred prior to the effective date of the insurance. That's at the end there in paragraph 15. I see that. Thank you. Further, paragraph 16, inclusion of the lost or not lost clause is permissive language, which indicated that the parties anticipated that coverage would be provided for shipments already in transit and not yet declared and functions to broaden further the binders and policies coverage provisions. So 15 and 16. Now, when you look at those, that declaration, and you look at the binder, and that is the effect that Adams is giving to the lost or not lost clause based upon trade usage and custom, then you buttress that with evidence from Jean McAbee, who said in her mind, the Dairy America person, we were covered. We believe that we were covered. You then have this triable issue of fact that the court merely says, well, gee, it's under geographical limit, therefore it's of no account to me. This is what this means. And yet that's not what the court is supposed to do under California law. The court must give weight to that aspect of trade usage and custom expert declaration and then allow, if there is a conflict, that aspect then goes to the jury. Now, in this case, there was no conflicting expert opinion other than an implied term or an implied argument, an implied argument by Fossler, which said, no, look, this is how this always works. In standard policies, this is how this always works. Well, the bottom line is, from our perspective, our expert says, well, wait a minute, this isn't standard here. I don't normally see that type of policy language in a binder or in a policy, so that takes it out of the standard. And further, it takes us into, well, what's covered? When is it covered? And that's the whole purpose, according to our expert, behind the lost or not lost clause. Now, the lower court, the lower court simply said, it's unavailing, but doesn't go into how the lower court or what's the reasoning behind how you get there. How do you make that unavailing if you have an expert here who says, this is what that means? You would either have to exclude his testimony, which was not done. You would have to say, for example, though the court said it was close to a legal conclusion, he didn't do that. The court did not exclude it on that basis. What he says is, gee, it's unavailing. It doesn't take care of Fossler. And yet Fossler never addresses the lost or not lost clause. So there's a step or two missing in the analysis. What do we do with the Gallagher situation? I think the opposing counsel argues in their brief, it's an agent. And I was looking in your brief for you to say, it's not an agent. But if, in fact, Gallagher is an agent, and you didn't. So if, in fact, Gallagher and I guess Ellen Jolly, is that her name, were agents, why don't we impute their knowledge to your client? Well, let's examine exactly what Ellen Jolly says. I mean, if you look at her, the language that's used, it doesn't say that she knew that it was not covered before the transition or before the effective date. Ellen Jolly touched on the issue generally of what she knew about the insurance policy or the insurance practices of Dairy America. And she touched on generally about her knowledge of standard policies. She was never asked, nor is there anything in the record, dealing with lost or not lost clause. There is an inference drawn by Appellee that this, in fact, imputes some knowledge that it wasn't covered. It doesn't say that. If you look at what's actually said on the stated page, on the declaration or, I'm sorry, on the deposition, there's no specific statement that gets you there. Not at all. But you don't argue with the general principle that they were agents of your client. Is that correct? But you're just saying that her statements about what she knew don't really define the meaning of the lost or not lost clause. We do not argue that she would be considered our agent. We would, however, strenuously, and in our reply point out, we would strenuously object to the characterization of her statements. Her testimony. Statements don't get her there. Did you want to say? No. Yeah, I will reserve the rest. Thank you. If it pleases the Court, it's still morning, and good morning. My name is Michael Bollikowski, and I represent, and I'm trying to be clear about the parties here. I represent New York Marine, and New York Marine is an insurance underwriter, and they write policies out of New York. They hire a managing general agent, and that's Southern Marine and Aviation. Southern Marine and Aviation is a specialty company that writes what they call ocean cargo policies. In our moving papers for the motion for summary judgment, we went to considerable effort to produce a number of policies that had been issued by Southern Marine, including the binders that were issued by Southern Marine. And we wanted to point out, and it's also pointed out in the information and the declaration of Andrew Fosler, that these binders are identical to the binders that were issued in the subject case, and that the policies were also identical to the policies that were issued in this case. And that's important because we wanted to demonstrate to the Court below that these were standard policies. And as a matter of fact, the numbering of these policies indicate that, as a matter of fact, they are called CAR00, CAR001. It's very similar, if the Court is familiar, with the ISO forms, and that the ISO forms are forms that are used, as a matter of fact, in order to avoid confusion among the various underwriters, because what they are is their standard language. They have a standard form to them. As a matter of fact, just like we call things that have words of art and that there are words of art within the legal community, within the insurance community, there are also words of art, policies of art. So when you say, Ellen Jolly says, I'd like to have the standard cargo policy, she knows just what she wants. And the standard cargo policy, in fact, must have certain limitations, requirements, and it does provide certain coverages, which Ellen Jolly very well knows, because in her declaration, not in her declaration, in her deposition, she said these things, the loss, in this case, things in transit prior to the inception of the policy are for the prior carrier. Now, interesting that the Court should also consider in this realm that Dairy America also sued Hartford. Hartford was the existing carrier. And at all times, Ellen Jolly assumed that the Hartford was a defendant in this case, and they said that they denied this claim. So they were the prior carrier. And I believe that if you look at Ms. Jolly, you'll find that it was her belief that all goods in transit prior to August 11th, I think in my case, were for another carrier. Let me – I'm going to jump around a little bit. I had a little more prepared talk, but I wanted to jump around a little bit to tell you why it's so important that goods in transit prior to the inception of the policy should not be covered. We're talking about milk powder in this case. And Andrew Fossler asked this question and said, well, why wouldn't an underwriter cover those things? Well, you would never know what damage occurred to those things. They could have been parked outside. They could have been damaged. There could be a risk that no underwriter would ever know. Not only that, but if you consider the fact that goods could be in transit literally for months and months, as these were, or even six or eight months, you would never know what you were underwriting. There could have been $100 million of goods being shipped out there. So with that in mind, it is very important that the insurance community specifically understands what they are underwriting. And in a case like this, the bill of lading, which is — which was published in this case, is, in fact, the controlling document. If the bill of lading is before August 11th, then it's the prior carrier's risk. In this case, the prior carrier was Hartford. Hartford was sued by the defendant, and as a matter of fact, they settled. So now they have brought, and they are continuing to bring this suit against Dairy America — I'm sorry, not Dairy America, against my clients, Southern Marine — get these names mixed up — and New York Marine. Now — Can you address the two paragraphs the opposing counsel points to in John Adams' declaration and explain why that doesn't create a genuine issue about what the custom policy is? Yeah. I believe that the court below characterized these as marginally, marginally admissible. What the court — everything here spins, and I can take a look at that language there. Everything in this case spins on the lost but not lost language, that they have a rent-to-issue expert who came onto the case, and the court below was pretty critical of that, saying that if we listen to this expert, then we can have a Rule 56 summary judgment motion because an expert can be a rent-to-expert, a rent-to-fact can be done. So the answer specifically, what I would say is, is that the judge said, you know, I'm supposed to understand the law, and I interpret the law. I've looked at the lost and not lost clause, and I don't think it says that. One, it's in the geographical limits section. And two, that it's clear to me that it says lost or not lost in travel. It has nothing to do — and the court below, and I agree with the court below, is that the court below, in fact, said that I've read it, I understand it, and this expert isn't going to tell me how to interpret the law. I believe that this Court, even though it does have a de novo right, should really take a look at the lost and do not lost clause and say, it is in a spot called geographical limits. So what it's talking about is, is lost or not lost anyplace in the world. It doesn't say inception. It has nothing to do with that. What — But it does say lost or not lost from ports and or places in the world to ports, which would indicate shipment of goods. And it says including the risk of trans-shipment by land, air, or water, and including violent storage worldwide ashore or afloat. It goes on blah, blah, blah, blah anywhere in the world. During what period? It doesn't say what period. And that's the crucial issue. That clause never mentions a period of time. And that is controlled in every policy of insurance. You've got to have the period. And that lost or do not lost clause specifically refers to the — But doesn't that make it ambiguous then and defeat summary judgment? No, Michael, I don't think it does. Because, first of all, is that if you have — let's take a look at the binder. And we take a look at the binder. And the binder is a snapshot of the policy. And the complaint here in the case, especially in the court below, was that we have a binder. And that the binder in the court below — in the whole case below, they argued that they wanted to enforce the binder. They said this binder is the law. We want to do this. This ambiguity argument is a new argument that's being raised at this time. And we really take objection to that, that this is being raised at this time in this court so that these issues may not have been developed properly below. So the binder points to the policy. And the policy has the same lost or not lost clause, but then says it doesn't cover items in transit at the effective date. That's right. So what do we do if those two are inconsistent? Which one controls? Well, they're not inconsistent because they're both in the geographical limits. So the court below, and I believe a fair reading of that, is that it's geographical limits. And what that says is if it's lost, if it's broken, if it's smashed, any place in the world, it's covered. But the binder and I have a time period. And the policy and the binder have a time period. It's like imagine if you bought a collision policy for your car. But what you're saying is the binder is issued, but it doesn't have any effect until the policy is issued. Right. But the law in California says this. But the law in California, how here an American emblem, really say this. What it says is in order for commerce to move, you've got to have protection. You've got to have something like if you're a contractor and you want to walk on the job, you've got to have a certificate of insurance. To get that certificate to work, to be able to be on that job, you have to be issued this. Now, the whole policy doesn't come at that time. And they understand that. And the courts understand that. And they say, well, we understand that the binder is a snapshot. And as a snapshot, what you do is when things go wrong, things go haywire, contrary to the world, it does go haywire, that what does occur is that you need to look at the policy in order to interpret what rights happen. So you can't adjust the policy. But you're saying they don't have any rights until a policy is issued. Oh, no, no, no. But the law in California says that there is, the binder is, a temporary form of insurance. That's right. That's correct. But you're saying it's a temporary form of insurance but it doesn't take any effect until the issuance of the policy, the date of the issuance of the policy. No. But what it's saying is that the binder has to have four pieces of information. It has to have what's covered, it has to have the time period, the rate, and, of course, the amount of money that's there. So those are the four things, which it does have. But what it says is in order to adjust and to compensate for the loss, in order to understand the contract, you need to have the whole policy because that whole policy is the meat, you know, it's the meat that holds everything together. Let me ask my conflict question in a slightly different way. So John Adams' declaration says that the loss or not loss clause would cover shipment already in transit on the effective date. The insurance policy has the same clause but then specifically says it doesn't cover items in transit on the effective date. So if we took John Adams' statement as being correct, then there's a conflict between the binder and the policy. So what does California law say about which one controls? Oh, okay. Here's what I'm going to tell you. This is our opinion and it's in our briefs we put this here. Every binder is ambiguous because it doesn't have all the terms and that's pretty clear because if you're going to talk about what is necessary in order to be able to explain this, all binders are by their nature ambiguous to an extent. But what you do is you go to the policy to understand. Now, let's go to the loss or not loss part. The court below really was very suspicious of the Mr. Adams' reading of all of the loss or not loss clause. First of all, I don't think it makes sense when you consider that he doesn't explain how lost or not lost says or what the facts are. You know, under 703, it's not a carte blanche. It has to have some factual basis to it. What Mr. Adams is saying is saying, well, you know, I'm an expert, I'm a commercial broker, and you know what I'm doing? I'm telling you that this is my opinion. Well, where are the facts? Where are the policies? Where is the information? Where is the evidence on that? Now, the court below didn't like it because he says you can't tell me what I can read and say lost and does not loss does not apply here. Okay. Now, if you want to say does it create an ambiguity, well, let's take a look at what else this guy, Mr. Adams, says. He says the binder provides coverage for the 23 loads before the policy is accepted. That's a legal conclusion. That's not for an expert to decide. That's for the court to decide. That would never get – all of us putting evidence in the court and sitting on the bench would never – that's a legal conclusion. That's an ultimate conclusion. We'd never get it. The next thing he says, that the Daily America's coverage briefs were reasonable. Well, wait a second. That's, again, a stepping into the wrong terrain. But if we take a look at what the court below said, he said I do not need to be told what the legal meaning of lost and does not loss means. There's no factual basis for that. All he says is in his declaration, oh, well, lost and not lost means this. Well, he agrees with your expert rather than their expert. Pardon? He agrees with your expert rather than their expert. No. What I think he's saying is under Evidence Code 703, me as a district court sitting here, I do not believe that that is any evidence that needs to be considered. It's not a balance of expert. It's going to create a material fact. Counsel, Judge Gould with a question for you on that, please, if I may. Did the district court below make an explicit ruling by excluding portions of the expert's testimony? Did he say that what Adam said is not admissible or I won't consider it because it's not proper expert testimony? Yes. As far as the lost and not lost clause, that was, I believe, that he did rule specifically on that, Your Honor. So he did make a decision. He didn't make a decision on that point at all. Let me. Well, your time is up, I think. May I end with my beginning? And my beginning is here. Does this case work just the way it's supposed to work? On that binder, my client paid $1.5 million, and they paid that money on that binder, and that's just what they should have done. Hartford Insurance Company, the preceding carrier here, didn't pay anything on that, and they sued them, and then they settled with them. So the binder worked the way it worked. This lost or not lost issue is not an issue that is particularly should be brought before the court because, one, it's an unsubstantiated legal conclusion by the court which the court believed was not supposed to be admitted. Thank you very much. Thank you. I think that argument points directly to what I'm trying to point out, which is this we're dealing with an ambiguity. We're dealing with one interpretation versus the other.   the issue to the federal court and to address Judge Gould specifically. That expert's opinion was never, ever excluded. That's what I wanted to know. Was it stricken or stricken in part or is it in the record? Not at all, Your Honor. No, not at all. If there's an ambiguity in the policy, so opposing counsel says, there's an ambiguity in the binder, but the policy is clear. But there's always ambiguities in the binder, so we look at the policy. Why don't we do that here? Well, I think there's a mistake with regard to how Adams' declaration should be used. He states that the inclusion of the loss or not clause in 16, in his 16, broadens the binder and the policy. So when we start talking about this problem between the binder and the policy, that misstates what our argument is. We're not saying that those are at odds in terms of binder versus policy. That's an argument, that's an old insurance industry argument that gets you nowhere for a person where I'm at, which is our argument is real simple. You have a loss or not loss clause, which is based upon not a legal conclusion, but on trade usage. That is an important aspect with regard to Maffei. That's an important aspect with regard to California law, that when you're talking about trade usage by that expert, that's going to be given greater weight than a district court judge who says, oh, I know what the law is, okay, but we know what the trade usage is. So even if the insurance policy, are you saying that even if the insurance policy has language which says it doesn't cover goods and transit, the fact that there's this loss but not loss clause makes the policy ambiguous? Absolutely. Absolutely, because you've got two irreconcilable provisions in the same policy. And you have thus an ambiguity with regard to the intention of the parties. Adams' declaration should have come in and should have been considered by a jury. What I heard today was a closing argument. I didn't hear an appellate argument. I heard a closing argument. That closing argument was you can't listen to Adams because he didn't do X, Y, and Z. And I also did not see, as Justice Gould points out, I didn't see where it was excluded or that it was a legal conclusion. What it said was I know what the law is. I'm not going to give effect to it. I agree with the other expert. You're out. Well, that judge took over the role of the jury. Simple, straightforward argument here. We're not talking about a complex insurance issue. We're talking about parole evidence in California. That's all I will submit. Thank you. Thank you very much. All right. The case Dairy America v. New York Marina and General Insurance Company is submitted. Judge, I could ask Judge Gould a question. Could we please take a break before the last argument? All right. The Court now will take a brief five-minute recess. Thank you. All rise.
judges: Mahan, Hall, Gould